No. 25-3529

---

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

DEMOND LILES,

*Petitioner-Appellant,*

v.

V. MICHAEL FISHER, WARDEN

*Respondent-Appellee.*

On Appeal from the United States District Court
for the Northern District of Ohio, Toledo (3:17-cv-2232)
District Judge James G. Carr

## OPENING BRIEF FOR APPELLANT DEMOND LILES

---

Daniel S. Harawa
*Counsel of Record*
Adam B. Murphy
New York University School of Law
Federal Appellate Clinic
245 Sullivan Street, Fifth Floor
New York, NY 10012
Phone: (212) 998-6420
Fax: (212) 995-4031
daniel.harawa@nyu.edu

Allison F. Hibbard
6555A Wilson Mills Road
Mayfield Village, OH 44143

*Counsel for Petitioner-Appellant*

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... ii

TABLE OF AUTHORITIES ............................................................................... iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ...........................................1

STATEMENT OF JURISDICTION .......................................................................1

STATEMENT OF THE ISSUES............................................................................2

STATEMENT OF THE CASE ..............................................................................3

    I. Factual Background.................................................................................3

        A. The State Indicted Mr. Liles on Drug Trafficking Charges ........................4

        B. Mr. Liles Entered a Guilty Plea...........................................................6

        C. The Government Breached the Plea Agreement ......................................9

    II. Procedural History ..............................................................................12

        A. The Direct Appeal ............................................................................13

        B. Federal Habeas Proceedings ..............................................................15

SUMMARY OF THE ARGUMENT ....................................................................22

STANDARD OF REVIEW ................................................................................25

ARGUMENT ..................................................................................................26

    I. Mr. Liles Can Overcome the Procedural Default of His Plea-Breach Claim Because His Trial Counsel Was Ineffective for Failing to Object to the State's Breach of the Plea Agreement. ..................................................................26

    A. Mr. Liles's Counsel's Failure to Object to the Breach Was Deficient Performance Constituting Cause.........................................................28

    B. Mr. Liles Was Prejudiced By Counsel's Failure to Object to the State's Breach…………..........................................................................31

    II. Mr. Liles Is Entitled to Habeas Relief on the Established Plea Breach. .........36

CONCLUSION ................................................................................................44

CERTIFICATE OF COMPLIANCE .....................................................................45

CERTIFICATE OF SERVICE.............................................................................46

ADDENDUM...................................................................................................47

ii

## TABLE OF AUTHORITIES

*Ambrose v. Booker*,
   684 F.3d 638 (6th Cir. 2012)................................................................41

*Baker v. United States*,
   781 F.2d 85 (6th Cir. 1986).................................................................38

*Baldridge v. Weber*,
   746 N.W.2d 12 (S.D. 2008)..................................................................32

*Cullen v. Pinholster*,
   563 U.S. 170 (2011) .......................................................................24, 40

*Deitz v. Money*,
   391 F.3d 804 (6th Cir. 2004)...............................................................37

*Ege v. Yukins*,
   485 F.3d 364 (6th Cir. 2007)...............................................................31

*Fay v. Noia*,
   372 U.S. 391 (1963) ............................................................................43

*Fontenot v. Crow*,
   4 F.4th 982 (10th Cir. 2021) ...............................................................38

*Hall v. Vasbinder*,
   563 F.3d 222 (6th Cir. 2009)..........................................20, 21, 26, 28

*Hensley v. Mun. Ct.*,
   411 U.S. 345 (1973) ............................................................................42

*Hilton v. Braunskill*,
   481 U.S. 770 (1987) ............................................................................44

*Hinkle v. Randle*,
   271 F.3d 239 (6th Cir. 2001)...................................................24, 25, 28

*In re Sealed Case*,
   573 F.3d 844 (D.C. Cir. 2009)............................................................37

*Jimenez v. Quarterman*,
  555 U.S. 113 (2009) ...................................................................................40

*Joseph v. Coyle*,
  469 F.3d 441 (6th Cir. 2006)..............................................25, 26, 27, 28, 32

*McGhee v. Yukins*,
  229 F.3d 506 (6th Cir. 2000).....................................................................41

*Montgomery v. Bobby*,
  654 F.3d 668 (6th Cir. 2011).....................................................................24

*Morrell v. Wardens*,
  12 F.4th 626 (6th Cir. 2021) ....................................................................43

*Morrison v. Warden*,
   2016 U.S. Dist. LEXIS 178653 (S.D. Ohio Dec. 27, 2016)..............................31

*Puckett v. United States*,
  556 U.S. 129 (2009) .............................................................32, 34, 35, 36, 42

*Renico v. Lett*,
  559 U.S. 766 (2010) ..................................................................................41

*Robinson v. Woods*,
  901 F.3d 710 (6th Cir. 2018).....................................................................43

*Santobello v. New York*,
  404 U.S. 257 (1971) .......................................................................23, 24, 38

*Smith v. Warden*,
  780 F. App'x 208 (6th Cir. 2019).........................................................26, 28

*State v. Bearse*,
  748 N.W.2d 211 (Iowa 2008) ...................................................................30

*State v. Butts*,
  679 N.E.2d 1170 (Ohio Ct. App. 1996).....................................................38

iv

*State v. Dixon*,
   263 N.E.3d 497 (Ohio Ct. App. 2025)................................................38

*State v. Gonzalez-Faguaga*,
   662 N.W.2d 581 (Neb. 2003) ................................................32

*State v. Horness*,
   600 N.W.2d 294 (Iowa 1999) .........................................29, 30

*State v. Smith*,
   558 N.W.2d 379 (Wis. 1997).................................................30

*State v. Soto,*
   No. 12-24-06, --N.E.3d--, 2025 WL 2762479 (Ohio Ct. App. 2025)..................40

*State v. Spence*,
   No. 09-CA-25, 2009 WL 4546628 (Ohio Ct. App. Dec. 4, 2009) ......................30

*Strickland v. Washington*,
   466 U.S. 668 (1984) ......................................17, 18, 19, 20, 30, 32, 37

*United States v. Allen*,
   918 F.3d 457 (5th Cir. 2019).................................................29

*United States v. Johnson*,
   979 F.2d 396 (6th Cir. 1992).................................................38

*United States v. Ligon*,
   937 F.3d 714 (6th Cir. 2019).................................................42

*United States v. Mandell*,
   905 F.2d 970 (6th Cir. 1990).................................................23, 26, 43

*United States v. Moncivais*,
   492 F.3d 652 (6th Cir. 2007).................................................23, 39, 40, 42

*United States v. Murray*,
   897 F.3d 298 (D.C. Cir. 2018) .........................................29

*United States v. Warren*,
  8 F.4th 444 (6th Cir. 2021) ...............................................................23, 42

*White v. Mitchell*,
  431 F.3d 517 (6th Cir. 2005)..................................................................28

*Woodford v. Visciotti*,
  537 U.S. 19 (2002) .................................................................................40

**Statutes**

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 2241 .......................................................................................1

28 U.S.C. § 2243 .....................................................................................43

28 U.S.C. § 2253 .......................................................................................1

28 U.S.C. § 2254 ..................................................................................1, 26

**Rules**

Federal Rule of Appellate Procedure 34..................................................1

Sixth Circuit Rule 34 ...............................................................................1

**Other Authorities**

Edward Latessa, et al., Creation and Validation of the Ohio Risk Assessment System
  Final Report (July 2009) .......................................................................10

National Vital Statistics Report, *United States Life Tables*, *2023* (July 15, 2025).....3

Dan Trevas, *Attorney Who Charged Excessive Fee Indefinitely Suspended*, Court
  News Ohio (Nov. 29, 2017) ...................................................................7

Emily Widra, *Incarceration shortens life expectancy*, Prison Policy Initiative (June
  16, 2017) ................................................................................................3

vi

U.S. Atty's Office, Northern District of Ohio, *Former Allen County Sherriff Indicted for Soliciting Bribes, Extortion, Making False Statements* (June 18, 2018). ........................................................................................................................5

U.S. Atty's Office, Northern District of Ohio, *Former Allen County Sheriff Pleads Guilty to Extortion and Soliciting Bribes* (Mar. 4, 2019) ......................................6

STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellant Demond Liles requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a) and Sixth Circuit Rule 34(a). This case meets the standards for oral argument under Rule 34(a)(2) because it raises complex issues of both law and fact that have not been recently and authoritatively decided.

STATEMENT OF JURISDICTION

On June 18, 2025, the United States District Court for the Northern District of Ohio entered a judgment dismissing Demond Liles's petition filed pursuant to 28 U.S.C. § 2254. In the same order, the district court also granted a Certificate of Appealability. Mr. Liles timely appealed on July 16, 2025. The district court had jurisdiction under 28 U.S.C. §§ 2241 and 2254. This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253.

1

STATEMENT OF THE ISSUES

The State of Ohio promised it would "make no sentencing recommendation" as part of the plea agreement it reached with Demond Liles. The state then broke its promise when it urged the sentencing court to impose a "much longer sentence" and "a very, very substantial sentence." On direct review, the Ohio Court of Appeals held that the state "clearly" breached the plea agreement. Yet because Mr. Liles's trial counsel did not object, the Court of Appeals denied relief because it was limited to plain-error review.

   I.   Was Mr. Liles's trial counsel ineffective for failing to object to this breach, excusing the procedural default of his plea-breach claim on habeas review?

   II.   Is Mr. Liles entitled to habeas relief for the state's breach of the plea agreement in violation of his due process rights?

<u>STATEMENT OF THE CASE</u>

## I.    Factual Background

After being investigated by a sheriff so cartoonishly corrupt that the United States Department of Justice said, when announcing his charges, that the sheriff's behavior resembled "something out of a bad movie," Demond Liles was indicted on fifteen counts in Ohio state court. Mr. Liles agreed to plead guilty to four of those counts. In exchange, the state agreed to dismiss the remaining eleven counts and promised to "make no sentencing recommendation."

The state broke its promise. At sentencing, the prosecutor closed his remarks by imploring the trial judge to impose a "much longer sentence" and a "very, very substantial sentence."

The judge obliged. He sentenced Mr. Liles, then 45 years old, to spend the next 25 years in prison—a virtual life sentence,[1] far exceeding the 14-year sentence Mr. Liles requested and the 11-year minimum sentence required by law.

---

[1] Black men's life expectancy in the United States is about 70 years. *See* National Vital Statistics Report, *United States Life Tables*, *2023* (July 15, 2025), https://www.cdc.gov/nchs/data/nvsr/nvsr74/nvsr74-06.pdf. That number is even lower when a person is incarcerated: "For each year behind bars, a person can expect to lose two years off their life expectancy." Emily Widra, *Incarceration Shortens Life Expectancy*, Prison Policy Initiative (June 16, 2017), https://www.prisonpol-icy.org/blog/2017/06/26/life_expectancy/#:~:text=In%20her%202013%20analy-sis%20of,years%20off%20their%20life%20expectancy.

## A. The State Indicted Mr. Liles on Drug Trafficking Charges

In December 2013, an Allen County Ohio grand jury indicted Demond Liles on fifteen counts arising from an alleged cocaine-trafficking conspiracy.[2] Indictment, R.30-1, PageID# 1169–84. According to the state, the charges stemmed from a "series of controlled drug transactions" between Mr. Liles and a confidential informant. Op., R.30-1, PageID# 1348. On paper, it looked like a routine narcotics case.

The reality was anything but.

The government's informant, Donald Wellman, had quite a past. After being arrested for operating an illegal marijuana grow, Wellman began cooperating with Allen County law enforcement. Affidavit, R.30-1, PageID# 2031; FBI FD-302a, R. 30.1, PageID# 1973–74. Mr. Liles had sold a motorcycle on Wellman's behalf, which turned out to be defective. Appellant's Br., R.30-1, PageID# 1222. The buyer sought a refund, and Wellman refused to pay. *Id.* Furious, the motorcycle buyer beat up Mr. Liles "real bad," threatening to shoot and kill him if he did not get his money back.

---

[2] The indictment charged the following counts: Count One: Trafficking in Cocaine; Count Two: Permitting Drug Abuse; Count Three: Trafficking in Cocaine; Count Four: Permitting Drug Abuse; Count Five: Trafficking in Cocaine; Count Six: Permitting Drug Abuse; Count Seven: Trafficking in Cocaine; Count Eight: Permitting Drug Abuse; Count Nine: Trafficking in Cocaine; Count Ten: Permitting Drug Abuse; Count Eleven: Trafficking in Cocaine; Count Twelve: Permitting Drug Abuse; Count Thirteen: Trafficking in Cocaine; Count Fourteen: Permitting Drug Abuse; Count Fifteen: Possession of Cocaine. Indictment, R.30-1, PageID# 1169–84. Counts one through twelve had a vehicle forfeiture specification, with count eleven also having a major drug offender specification. *Id.*

Sent'g Hr'g, R.30-2, PageID# 2405. Mr. Liles was especially concerned about his young children—who were with him "almost every day"—being harmed by the motorcycle buyer. *Id.* So Wellman suggested that he and Mr. Liles "sell some drugs together" to raise the money, setting up the controlled buys that were the basis of the charges. *Id.*

But the story was bigger than Wellman. Allen County Sheriff Samuel Crish had concocted the entire scheme. Mem. in Supp. of Jurisdiction, R.30-1, PageID# 2245. Mr. Liles had loaned Sheriff Crish money. Report & Recommendation, R.33, PageID# 2472. But rather than pay him back, Mr. Liles alleged that Crish cooked up this case to avoid paying his debt. *Id.*, PageID# 2473.

Ohio courts dismissed Mr. Liles's story as nothing more than "wild conspiracy theories." *Id.*, PageID# 2475. As it turns out, the United States Department of Justice eventually investigated Sheriff Crish for criminal conduct that both preceded and followed the prosecution of Mr. Liles. *See* Indictment, *United States v. Samuel A. Crish*, R.30-1, PageID# 2034–48. Crish's criminal conduct looked exactly like what Mr. Liles alleged: Crish would ask people for "loans," and then abuse his office to avoid paying them back.[3] Indeed, far from it being a "wild conspiracy," Mr. Liles

---

[3] U.S. Atty's Office, Northern District of Ohio, *Former Allen County Sheriff Indicted for Soliciting Bribes, Extortion, Making False Statements* (June 18, 2018), https://www.justice.gov/usao-ndoh/pr/former-allen-county-sheriff-indicted-soliciting-bribes-extortion-making-false.

was officially named as one of Crish's victims in the federal prosecution. Affidavit, R.30-1, PageID# 2031 (citing *United States v. Samuel A. Crish*, 3:18-cr-00304-JRK, R. 33-1, PageID# 226); *see also* Redacted Restitution List of Victims, R.30-1, PageID#2056) (listing "D.L." among victims).

As a result, in 2019, Crish pleaded guilty in federal court to multiple counts of extortion and bribery for "asking for and taking bribes from drug dealers, people arrested in prostitution stings, suspected gamblers, and others."[4] *See* Indictment, *United States v. Samuel A. Crish*, R.30-1, PageID# 2034–48. As the U.S. Attorney for the Northern District of Ohio put it when announcing Crish's guilty plea (a federal court would later sentence Crish to 11 years' imprisonment[5]): Sheriff Crish's behavior was "as offensive as it [was] audacious . . . like something out of a bad movie."[6]

### B. Mr. Liles Entered a Guilty Plea

Back to Mr. Liles's case. The Court of Common Pleas held a bond hearing on September 4, 2014. Bond Hr'g, R.30-2, PageID# 2299. At the hearing, the prosecutor noted for the record that the state had offered Mr. Liles a guilty plea. Bond Hr'g,

---

[4] U.S. Atty's Office, Northern District of Ohio, *Former Allen County Sheriff Pleads Guilty to Extortion and Soliciting Bribes* (Mar. 4, 2019), https://www.justice.gov/usao-ndoh/pr/former-allen-county-sheriff-pleads-guilty-extortion-and-soliciting-bribes.

[5] *See* Judgment, *United States v. Samuel A. Crish*, R.30-1, PageID# 2049–50.

[6] *See supra* note 4.

R.30-2, PageID# 2338. The offer was that Mr. Liles would plead guilty to four counts[7] in exchange for the remaining eleven counts being dismissed. *Id.* The prosecutor also noted that under the offered agreement, "the State would reserve the right to be heard at sentencing." *Id.* Mr. Liles rejected this offer. *Id.*

The Court of Common Pleas held a change-of-plea hearing on September 22. Change Plea Hr'g, R.30-2, PageID# 2345. At this hearing, Mr. Liles was represented by Christopher Bucio. *Id.* Unbeknownst to Mr. Liles at the time, law enforcement had raided Bucio's office just days before the change-of-plea hearing. Mem. in Supp. of Jurisdiction, R.30-1, PageID# 1384. Just two years later, Bucio would have his own change-of-plea hearing, during which he pleaded guilty to a felony based on his unlawfully selling a client's property. *See* Successor Postconviction Pet., R.30-1, PageID# 1919 & n1.[8] Thus, Bucio was representing Mr. Liles with his own cloud of criminality looming overhead.

By the time of Mr. Liles's plea hearing, the state's original offer had expired, so the prosecutor had to put the terms of the new agreement on the record. Bond Hr'g, R.30-2, PageID# 2338 (prosecutor saying the initial offer would be open for 14 days, until September 16).

---

[7] Counts One, Five, Seven, and Eleven. Bond Hr'g, R.30-2, PageID# 2338.
[8] *See also* Dan Trevas, *Attorney Who Charged Excessive Fee Indefinitely Suspended*, Court News Ohio (Nov. 29, 2017), https://www.courtnewsohio.gov/cases/2017/SCO/1129/170800.asp.

Under the new agreement, the prosecutor informed the court that Mr. Liles would plead guilty to the same four charges that were outlined in the expired offer, and the state would dismiss the remaining eleven charges. Change Plea Hr'g, R.30-2, PageID# 2348. The state would still "reserve the right to be heard at sentencing." *Id*. And according to the prosecutor, the state also agreed that "it would make no specific sentencing recommendation in this case." *Id.*

The state and Mr. Liles executed a change-of-plea form that memorialized the formal, binding terms of the agreement. Negotiated Plea of Guilty Form, R.30-1, PageID# 1185. Consistent with what was orally represented at the hearing, the form set forth the four charges to which Mr. Liles would plead guilty in exchange for the remaining eleven charges being dismissed. *Id.* On the form, a box was checked indicating that "the state reserved the right to be heard at sentencing." *Id.*, PageID# 1186 (capitalization omitted). And another box was checked clarifying that not only will the state refrain from making a "specific sentencing recommendation," "THE STATE OF OHIO WILL MAKE NO SENTENCING RECOMMENDATION," full stop. *Id.* (capitalization in original).

With these agreed-upon terms, Mr. Liles entered a plea of guilty. Change Plea Hr'g, R.30-2, PageID# 2373.

8

## C. The Government Breached the Plea Agreement

In his sentencing memorandum, Mr. Liles requested a sentence of 14 years—his range was 11–31.5 years. Negotiated Plea of Guilty Form, R.30-1, PageID# 1185; Sent'g Mem., R.30-1, PageID# 1190. Three of the four counts had mandatory sentences (Counts 5, 7, and 11); Mr. Liles asked the judge to run the sentences for two of the counts (Counts 5 and 7) concurrently. Sent'g Mem., R-30, PageID# 1191.

In asking for a concurrent sentence, Mr. Liles explained to the court that at the time of sentencing, he would be 45 years old. *Id.*, R-30, PageID# 1192. Therefore, even if the court were to impose the requested 14-year sentence, he would be almost 60 by the time he got out. *Id.* Mr. Liles admitted that his record was not spotless. *Id.*, PageID# 1193. But as he told the court, he was the "father of several children, and even with a legitimate car detailing business, he was under significant financial strain." *Id.* It was this financial strain that led to Mr. Liles's "criminal behavior"— he never "intend[ed] or expect[ed] physical harm to persons or property," and no person or property was harmed in this case. *Id.* With letters from community members attached in support of the request (including one from a family member of the sheriff), Mr. Liles said that with a 14-year sentence, he would "be adequately deterred and the public adequately protected." *Id.*, PageID# 1192.

At the sentencing hearing, the state went first. The prosecutor acknowledged that the Ohio Risk Assessment System (ORAS) scored Mr. Liles as a "moderate risk"

9

of recidivism. Sent'g Hr'g, R.30-2, PageID# 2386. But the prosecutor told the court that he "placed very little meaning in [this] score" and considered it "an absolute fallacy in the system." *Id.*[9] In the prosecutor's mind, Mr. Liles's drug sales were "the worst form of the offense." *Id.*, PageID# 2386–87. Despite Mr. Liles being accused of conducting controlled buys with a government informant and arranged by a government official, the prosecutor went on at length about "kids" being addicted to drugs "because of the product that [Mr. Liles] put[] on the street," and laid blame at Mr. Liles's feet for all the "addicts" who "commit other crimes." *Id.*, PageID# 2387. "How many people," asked the prosecutor, "have been shot, killed, maimed, and injured as a result of these illegal activities and drugs?" *Id.*, PageID# 2388. (The answer was zero).

The prosecutor warned the court that others were "watching" to see what the court did—"to see whether or not the cost of doing business is going to be worth it." *Id.*, PageID# 2388–89. This, the prosecutor told the court, was something it was "supposed to look at." *Id.*, PageID# 2389. And the prosecutor "bristle[d]" at the notion that Mr. Liles deserved mercy. *Id.*

---

[9] In addition to being adopted by the State of Ohio and relied on in courtrooms throughout the state, the ORAS was scientifically validated in 2009, five years before the prosecutor characterized it as "an absolute fallacy." *See* Edward Latessa, et al., Creation and Validation of the Ohio Risk Assessment System Final Report (July 2009), https://www.uc.edu/content/dam/uc/ccjr/docs/reports/project_reports/ORAS_Final_Report.pdf.

Finally, the prosecutor closed by "submit[ting] to the Court . . . that certainly a longer sentence, a much longer sentence, is the appropriate sentence and anything less would demean the seriousness of his offense." Sent'g Hr'g, R.30-2, PageID# 2390. And he reiterated his "belief that [the judge] owe[d] it to the community to impose a very, very substantial sentence on this defendant." *Id.*, PageID# 2391.

Bucio, who was still representing Mr. Liles despite being the subject of his own criminal investigation, did not object to these remarks. Instead, when it was his turn to speak, he largely rehashed what was said in Mr. Liles's sentencing memorandum and called two witnesses to testify in support of Mr. Liles. *See Id.*, PageID# 2391–96.

Mr. Liles spoke last. He expressed deep remorse for what he had done, and he tried to explain to the judge how he became involved in these crimes after being hard working and law-abiding for thirteen years. *Id.*, PageID# 2399–2400. Regarding Mr. Liles's deep fear of being harmed by the motorcycle driver, the judge belittled his story. *Id.*, PageID# 2402 ("Now that, to me, is about the lamest excuse to sell drugs that I could ever hear."). And the judge disregarded that Mr. Liles was afraid for his life after being beaten and threatened as a result of a scheme organized by the county sheriff. *See, e.g.*, *Id.*, PageID# 2408.

Instead, the judge wholesale adopted the state's narrative, asking Mr. Liles, in a case limited to controlled buys: "[H]ow many people maybe that you didn't sell

directly to, but ended up receiving the cocaine that began with you, how many of those people were killed by guns or committed other crimes? I mean, that's what this is about here." *Id.*, PageID# 2401. The judge, like the prosecutor, similarly dismissed Mr. Liles's ORAS score because he did not "know exactly what it's worth" despite it being required by the "powers that be in the State of Ohio" (and scientifically validated). *Id.*, PageID# 2416.

The judge then announced his sentence. After imposing a sentence for each of the four counts, the judge had to decide whether the sentences he "imposed should be consecutive or concurrent to each other." *Id.*, PageID# 2418. "[B]ased upon the mitigation motion that defense counsel ha[d] filed, and *based upon the statements of all of the people that spoke up* [at the hearing]," he determined "that consecutive sentences [were] necessary to protect the public from future crime and to punish [Mr. Liles]." *Id.*, PageID# 2417–19. (emphasis added). He sentenced Mr. Liles to 25 years in prison. Judgment, R.30-1, PageID# 1201–02.[10]

## II.   Procedural History

After the State of Ohio broke its promise not to make a sentencing recommendation, Mr. Liles sought relief in both state and federal court. On direct appeal, the

---

[10] Mr. Liles filed a motion for relief from judgment in the trial court arguing that the prosecutor breached the plea agreement at sentencing. But because the motion was filed while his direct appeal was pending, the trial court dismissed it for lack of jurisdiction. Report & Recommendation, R.33, PageID# 2472.

Ohio Court of Appeals agreed that the state violated the plea agreement but denied relief under a plain-error standard given Mr. Liles's trial counsel's failure to object. Mr. Liles then filed a federal habeas petition raising the same plea-breach claims he had exhausted in state court. In a detailed report and recommendation, a magistrate judge recommended granting habeas relief, but the district court rejected that recommendation and dismissed the petition.

### A. The Direct Appeal

On appeal and with new counsel, Mr. Liles argued that the state breached the plea agreement when it asked the judge to impose a "much longer" and "very, very substantial sentence." Op., R.30-1, PageID# 1351. He also argued that his trial counsel was ineffective for failing to object to the breach. *Id.*

The Court of Appeals of Ohio, Third District, held that the prosecutor did, in fact, breach the plea agreement. As that court said: "when the prosecutor checked the box promising to 'make no sentencing recommendation,' the prosecutor was bound to refrain from making statements suggesting or intimating the length of the sentence that should be imposed as it did in this case." *Id.*, PageID# 1355. Thus, the Court of Appeals "conclude[d] that the prosecutor's statements to the trial court at sentencing . . . clearly overstepped the boundaries of the promise to 'make no sentencing recommendation' and as such violated the plea agreement." *Id.*, PageID# 1356 (brackets omitted).

13

But because Bucio did not object, the Court of Appeals was "limited to a plain error review." *Id*. And to establish plain error, Mr. Liles had to "point to an obvious error that affected the outcome of the proceedings below." *Id*.

The Court of Appeals first addressed Mr. Liles's argument that the outcome was affected because the state's agreement not to make a sentencing recommendation was material to his entering the deal. As the Court of Appeals noted, Mr. "Liles initially rejected the plea agreement involving the dismissal of the same eleven counts" and the "only difference" between the plea agreement he rejected and the one he accepted "was the addition of the prosecution's promise to refrain from making a sentencing recommendation." Op., R.30-1, PageID# 1358. But because Bucio did not object to the breach, the Court of Appeals held that it could not have been "*so integral* to [Mr.] Liles' decision to accept the agreement." *Id.*, PageID# 1359 (emphasis in original). Reasoned the court, which at the time was oblivious to Bucio's legal woes: "[T]he absence of any such objection undermines the credibility of [Mr.] Liles' argument that he would not have entered into the plea agreement but for the prosecutor's promise to make no sentencing recommendation." *Id*.

The Court of Appeals next addressed Mr. Liles's argument "that the prosecutor's statements at sentencing improperly influenced the trial court's sentence in such a manner as to establish plain error." *Id.* In rejecting this argument, the Court of Appeals held that "the record does not indicate that the prosecutor's statements at

14

sentencing improperly influenced the trial court's sentence in such a manner as to establish plain error." *Id.*, PageID# 1368. Thus, the court concluded that Mr. Liles "failed to satisfy his burden that the outcome clearly would have been different absent the breach or that reversal of the sentence is necessary in order to prevent a manifest miscarriage of justice." *Id.*, PageID# 1369.

Based on this conclusion, the Court of Appeals also rejected Mr. Liles's ineffective assistance of counsel claim, reasoning that "even if [Mr.] Liles [could] establish that his trial counsel should have objected, he [could not] demonstrate the requisite prejudice to prove ineffective assistance of counsel." *Id.*, PageID# 1371.

The Ohio Supreme Court declined to hear the appeal. Entry, R.30-1, PageID# 1428.

### B. Federal Habeas Proceedings

Mr. Liles filed his federal habeas petition in the United States District Court for the Northern District of Ohio on October 20, 2017. Pet. for Relief, R.1, PageID# 1. In his petition, Mr. Liles argued that the state courts "unjustly denied relief from the established prosecution breach of the plea agreement,"[11] and that he was denied

---

[11] Mr. Liles made the argument across two claims. Ground One argued: "The State of Ohio unjustly denied relief from the established breach of the plea agreement with an unreasonable application of law in unreasonably finding that no objection to the breach was offered." Pet. for Relief, R.1, PageID# 6. Ground Two argued: "The State of Ohio denied relief for a material breach of the plea agreement by unjustly finding

the "effective assistance of counsel" when his lawyer failed to object to the breach. Pet. for Relief, R.1, PageID# 6, 9.

> ### i. *The magistrate judge recommended Mr. Liles be granted habeas relief.*

After much back-and-forth between the state and federal courts,[12] on September 6, 2023, the magistrate judge issued a 58-page report and recommendation recommending that Mr. Liles be granted habeas relief on his plea-breach claims. Report & Recommendation, R.33, PageID# 2501–02.

Starting with Mr. Liles's substantive claim that the state violated his due process rights by breaching the plea agreement, the magistrate judge first addressed procedural default. The judge concluded that Mr. Liles had defaulted these claims because Ohio has a "'contemporaneous objection' rule, pursuant to which a defendant who fails to contemporaneously object to an alleged violation waives appellate review of the issue unless the defendant demonstrates plain error." Report & Recommendation, R.33, PageID# 2490–91. Here, the Ohio Court of Appeals "enforced the procedural bar" when it "limit[ed] its review to plain error review." *Id.*, PageID#

---

the breach to be immaterial, thereby unreasonably applying Supreme Court precedent." *Id.*, PageID# 8. The magistrate judge addressed the two claims together. Report & Recommendation, R.33, PageID# 2487–2501. Only Ground Two is at issue.

[12] Mr. Liles filed a state post-conviction petition raising several claims related to Sheriff Crish's criminal activity. Report & Recommendation, R.33, PageID# 2477. Those claims and their related procedural history are not relevant here.

16

2491. Thus, the magistrate judge held that Mr. Liles had to show both cause and prejudice to overcome the procedural default. *Id.*, PageID# 2492.

The magistrate judge then held that Mr. Liles could satisfy that showing because Bucio rendered ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984). Report & Recommendation, R.33, PageID# 2493. The judge "conclude[d] that there is no reasonable dispute that Mr. Liles' trial counsel performed below an objective standard of reasonableness in failing to object to the prosecutor's statements at the sentencing hearing." *Id.*, PageID# 2494. As the magistrate judge explained, there was no strategic reason for Bucio not to have objected. *Id.*, PageID# 2495. This conclusion was "bolstered by the fact that the sentencing recommendation issue appear[ed] to have been an important one during plea negotiations," as Mr. Liles "previously rejected a plea offer that was identical to the one he ultimately accepted, except that the prosecution did not offer to refrain from making a sentencing recommendation. It was only after that term was included that Mr. Liles agreed to accept the plea." *Id*.

Turning to prejudice, the magistrate judge noted that Mr. Liles made two separate prejudice arguments. The first was that he would not have entered the agreement had he known the state would breach it. *Id.*, PageID# 2496. The magistrate judge rejected this argument because *Strickland* prejudice in the plea-breach context

17

focuses on whether the breach "affected [the] sentence." *Id.* (quotation marks omitted).

This was Mr. Liles's second prejudice argument—the breach affected his sentencing. *Id.* The magistrate judge agreed. The judge recounted that "the prosecution made two separate statements arguing for a lengthy prison sentence" at the sentencing hearing. *Id.*, PageID# 2497. And while the Ohio Court of Appeals found that it was "far more likely that the judge was influenced by his colloquy with Mr. Liles than by the prosecutors' statements," as the magistrate judge explained, that's not the standard under *Strickland*. *Id.*, PageID# 2498. Rather, all Mr. Liles had to demonstrate was "a probability sufficient to undermine confidence in the outcome." *Id.* (quotation marks omitted). And the magistrate judge held that Mr. Liles satisfied this showing "[g]iven the strength of the prosecution's [inappropriate] statements, which argued that a harsher sentence was not merely appropriate, but something the trial judge owed the community." *Id.* Beyond that, the breach also created "the possibility that the trial judge's colloquy" with Mr. Liles "was itself influenced by the prosecution's sentencing recommendation." *Id.*

Finding that Mr. Liles established cause and prejudice to excuse the procedural default, the magistrate judge then turned to the merits of the plea-breach claim. The judge agreed with the Ohio Court of Appeals that "the prosecution breached the

18

plea agreement in violation of Mr. Liles's constitutional rights and clearly established law." Report & Recommendation, R.33, PageID# 2500. Thus, the only question was the remedy. *Id.* For that, the magistrate judge recommended that the district court grant Mr. Liles's petition but leave it to the state courts to choose the appropriate remedy in the first instance. *Id.*, PageID# 2500–01.

Because the magistrate judge had just performed a *Strickland* analysis, her analysis of the ineffective assistance of counsel claim based on trial counsel's failure to object to the breach "largely mirror[ed]" her procedural default analysis. *Id.*, PageID# 2501. Thus, the magistrate judge recommended that Mr. Liles be granted habeas relief on his IAC claim, too. *Id.*, PageID# 2520–21.

The magistrate judge gave the parties 14 days to object to her report. *Id.*, PageID# 2521. The state objected, arguing that, contrary to the magistrate judge's recommendation, Mr. Liles was not entitled to relief on any of his claims. Resp't's Objections, R.35, PageID# 2558.[13]

    ii.    *The district court rejected the magistrate judge's report and recommendation.*

Given that the magistrate judge's report sat pending for almost two years, Mr. Liles was forced to file a motion asking the district court to rule. Mot. for Resp.,

---

[13] Mr. Liles also filed an objection to the magistrate judge's denial of two of his claims that are not at issue here. Pet'r's Objections, R.36, PageID# 2560. The district court denied his objections. Order, R.40, PageID# 2604.

R.39, PageID# 2600. On June 18, 2025, the district court issued an order rejecting the magistrate judge's report and recommendation. Order, R.40, PageID# 2604.

Regarding procedural default, the district court recognized that it did *not* have to defer to the Ohio Court of Appeals' ineffective-assistance-of-counsel ruling. *Id.*, PageID# 2615. This is so because "an argument that ineffective assistance of counsel should excuse procedural default is treated differently than a free-standing claim of ineffective assistance of counsel. The latter must meet the higher AEDPA standard of review, while the former need not." *Id.*, PageID# 2614 (brackets, internal citation, and quotation marks omitted) (quoting *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009)). And the district court conceded that trial counsel's "failure . . . to object to the prosecution's alleged breach of the plea agreement during sentencing may constitute deficient performance." Order, R.40, PageID# 2615.

But the district court concluded that "[n]othing about [Mr. Liles]'s sentencing suggests to [it] that the probability of an objection to the prosecutor's sentencing recommendation producing a different sentence is high enough to undermine confidence in the sentence [Mr. Liles] did receive." *Id.*, PageID# 2617. "That is not to say," continued the district court, "that the prosecutor's recommendation unequivocally played no role in the sentencing court's analysis. Indeed, at one point the court noted that its sentence was in part based on 'the statements of all of the people that spoke up today, including the defendant.'" *Id.* And as the district court went on, "a

20

prosecutor's recommendation at sentencing undoubtedly matters to the court, even where, as here, the record contains no indication that the court gave that recommendation any special weight or consideration." *Id.*

Still, the district court held that "in light of the sentencing record," there was no reasonable probability that trial counsel objecting to the prosecutor's breach would have resulted in Mr. Liles receiving a different sentence. *Id.*, PageID# 2618. Thus, Mr. Liles could not overcome the procedural bar to his plea-breach claim.

For the same reason that he could not show prejudice to overcome the procedural bar, the district court held that Mr. Liles also could not show prejudice to make out an ineffective-assistance-of-counsel claim. Order, R.40, PageID# 2620.

After rejecting the magistrate judge's recommendations and holding Mr. Liles was not entitled to relief on any of his claims, the district court granted a certificate of appealability on two issues related to Mr. Liles's substantive plea-breach claim. Whether: "(1) unconstitutionally ineffective assistance of counsel excuses Petitioner's procedural default of his breach-of-plea-agreement claim; and (2) Petitioner's breach-of-plea agreement claim states a valid claim of the denial of a constitutional right." *Id.*, PageID# 2621.

This appeal followed.[14]

---

[14] New York University School of Law's Federal Appellate Clinic is representing Mr. Liles pro bono.

SUMMARY OF THE ARGUMENT

Due process requires "that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). "In other words, a defendant has a due process right to hold the government to the promises it made that induced him to plead guilty." *United States v. Warren*, 8 F.4th 444, 448 (6th Cir. 2021). Because, by pleading guilty, a defendant waives his most fundamental rights, prosecutors are held to "meticulous standards of performance." *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007) (citation omitted). "[T]he government must do more than pay lip service to its obligations—[the Constitution] forbid[s] 'not only explicit repudiation of the government's assurances' but also 'end-runs around them.'" *Warren*, 8 F.4th at 448 (quoting *Moncivais*, 492 F.3d at 662)).

"[T]he Supreme Court in *Santobello* was clear that whether the government's breach actually influenced the sentencing judge is irrelevant." *Warren*, 8 F.4th at 450. Once a breach is found, the only remaining question is remedy—either (1) specific performance by remanding for resentencing before a different judge, or (2) allowing the defendant to withdraw his plea. *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990) (citing *Santobello*, 404 U.S. at 262–63).

22

Here, the Ohio Court of Appeals held that the state breached its agreement with Mr. Liles when it promised to "make no sentencing recommendation," yet urged the court to impose a "much longer" and "very, very substantial sentence." Sent'g Hr'g, R.30-2, PageID# 2390–91. This holding is owed deference. *See Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (en banc) (recognizing the "highly deferential standard for evaluating state-court rulings" and explaining that AEDPA "demands that state-court decisions be given the benefit of the doubt" (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quotation marks omitted)).

Ordinarily, that would end the matter. Once a plea is breached, a due process violation is established, and a remedy is required. *Santobello*, 404 U.S. at 262–63.

The complication is that Mr. Liles's defense counsel failed to object to the breach. Because of counsel's failure to contemporaneously object, the Ohio Court of Appeals reviewed Mr. Liles's plea-breach claim for plain error, applying its "utmost caution" and refusing to grant relief because this case did not present "a manifest miscarriage of justice." Op. R.30-1, PageID# 1357.

The Ohio Court of Appeals' application of its "contemporaneous objection rule constitute[d] an adequate independent state ground that bars federal habeas review" of Mr. Liles's plea-breach claim unless he can show "cause and prejudice." *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). He can show both.

23

Ineffective assistance of counsel establishes cause and prejudice necessary to excuse procedural default. *Id.* at 245; *Joseph v. Coyle*, 469 F.3d 441, 462–63 (6th Cir. 2006). Here, counsel performed deficiently when he failed to object to the state's breach—the "cause" for the default.

This leaves prejudice. And there is a reasonable probability that the prosecutor's remarks influenced the sentencing for at least three reasons.

One, the sentencing judge *said* he considered all the remarks made at the hearing when fashioning his sentence, which included the prosecutor's. Two, the judge parroted the prosecutor's concerns throughout the sentencing hearing. Three, the judge in fact imposed a "very, very substantial sentence" when he condemned Mr. Liles to spend 25 years in prison—a sentence "much longer" than the one Mr. Liles requested and that the law required. As the district court acknowledged, "a prosecutor's recommendation at sentencing undoubtedly matters to the court." Order, R.40, PageID# 2617. Taken together, these facts reveal a reasonable probability that the prosecution's imprudent recommendation mattered here, prejudicing Mr. Liles.

This Court should hold that Mr. Liles received ineffective assistance of counsel, which excuses the procedural default of the plea-breach claim. Once this Court so holds, it should grant the Writ. The state breached the plea agreement it entered with Mr. Liles in violation of his due process rights.

24

## STANDARD OF REVIEW

Generally, under the Antiterrorism and Effective Death Penalty Act of 1996, when a state court decides a federal constitutional claim on the merits, the federal habeas court must defer to the state court unless: (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court"; or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

That said, "[a]n argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel." *Hall*, 563 F.3d at 236. "The latter must meet the higher AEDPA standard of review, while the former need not." *Id.* at 237. An ineffective-assistance-of-counsel claim raised in the context of procedural default is reviewed de novo. *Smith v. Warden*, 780 F. App'x 208, 225 (6th Cir. 2019). Likewise, this Court reviews "*de novo* a district court's denial of a habeas petition." *Joseph*, 469 F.3d at 449.

25

## ARGUMENT

**I.    Mr. Liles Can Overcome the Procedural Default of His Plea-Breach Claim Because His Trial Counsel Was Ineffective for Failing to Object to the State's Breach of the Plea Agreement.**

The key provision of the plea agreement—which induced Mr. Liles into accepting the state's offer—was the state promise's to "make no sentencing recommendation." Negotiated Plea of Guilty Form, R.30-1, PageID# 1186. Mr. Liles had rejected an almost identical agreement when it did not contain that term. Report & Recommendation, R.33, PageID# 2495. Thus, under the agreement Mr. Liles entered, "the prosecutor was bound to refrain from making statements suggesting or intimating the length of the sentence that should be imposed." Op., R.30-1, PageID# 1355. As the Ohio Court of Appeals held, the state "clearly overstepped the bounds of its promise" when it argued to the judge at sentencing "that certainly a longer sentence, a much longer sentence, is the appropriate sentence and anything less would demean the seriousness of this offense," and told the sentencing judge that he "owe[d] it to the community to impose a very, very substantial sentence." *Id.*, PageID# 1356; Sent'g Hr'g, R.30-2, PageID# 2390–91.

Despite this "clear[ ]" breach, Mr. Liles's counsel did not object. Had counsel objected, the state's breach would have compelled an automatic remedy—Mr. Liles would have either been able to withdraw his plea or allowed to be resentenced before a different judge. *See Mandell*, 905 F.2d at 973. But because counsel sat silent, Mr.

26

Liles's plea-breach claim was reviewed only for plain error under Ohio's "contemporaneous objection" rule. Report & Recommendation, R.33, PageID# 2490–91

This Court has held that an Ohio court's application of the "contemporaneous objection rule is an independent and adequate state ground [that] foreclose[s] [habeas] relief absent a showing of cause and prejudice." *White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005). But it has also held that "[a]ttorney error that amounts to ineffective assistance of counsel [under *Strickland*] can constitute 'cause' under the cause and prejudice test." *Hinkle*, 271 F.3d at 245 (citation and quotation marks omitted). And "establishing *Strickland* prejudice likewise establishes prejudice for purposes of cause and prejudice." *Joseph*, 469 F.3d at 462–63. As such, if Mr. Liles can meet the *Strickland* ineffective-assistance-of-counsel standard by showing: (1) his counsel was deficient in failing to object to the breach; and (2) his counsel's deficient performance prejudiced him, he can overcome AEDPA's procedural bar. *See Hall*, 563 F.3d at 237.

Importantly, while the Ohio Court of Appeals ruled on an ineffective-assistance-of-counsel claim on direct appeal, that decision is owed no deference. *Id.* An ineffective-assistance-of-counsel claim "is reviewed de novo if it is used to establish cause for procedural default so that the underlying claim can be reviewed on the merits." *Smith*, 780 F. App'x at 225.

27

### A. Mr. Liles's Counsel's Failure to Object to the Breach Was Deficient Performance Constituting Cause.

As the Ohio Court of Appeals held, the state "clearly" breached the plea agreement it reached with Mr. Liles when it promised it would "make no sentencing recommendation," but then implored the court to impose a "much longer sentence" and "a very, very substantial sentence."[15] Op., R.30-1, PageID# 1355–1356; Sent'g Hr'g, R.30-2, PageID# 2390–91. Mr. Liles's "counsel had an obligation to object when the prosecutor breached [the plea] agreement by making a [sentencing] recommendation." *United States v. Murray*, 897 F.3d 298, 311 (D.C. Cir. 2018); *see United States v. Allen*, 918 F.3d 457, 462 (5th Cir. 2019) (explaining that if prosecution breached the plea agreement, defendant's "counsel's failure to object to the breach may have fallen 'below an objective standard of reasonableness'") (citation omitted).

It is an uncontroversial proposition: "When the State breache[s] a plea agreement, the defendant's trial counsel clearly ha[s] a duty to object." *State v. Horness*, 600 N.W.2d 294, 300 (Iowa 1999). Because plea bargaining involves a defendant entering a contract with the state in which he forgoes his most fundamental rights, counsel has a duty to object to a breach to "ensure that the defendant received the benefit of the agreement." *Id.* "A fundamental component"—indeed, *the* fundamental component of plea bargaining—"is the prosecutor's obligation to comply with

---

[15] As explained in Part II, this holding is owed deference.

28

[his] promise." *State v. Bearse*, 748 N.W.2d 211, 215–16 (Iowa 2008). "[O]nly by objecting could counsel ensure that the defendant received the benefit of the agreement." *Horness*, 600 N.W.2d at 300.

While courts generally "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, "no possible advantage could flow to the defendant from counsel's failure to point out the State's noncompliance" with a plea agreement. *Horness*, 600 N.W.2d at 300. A defense counsel's failure to force the state to uphold its end of the bargain flies "in the face of the 'informed strategic choice' made by [the defendant] earlier when he entered into the plea agreement." *State v. Smith*, 558 N.W.2d 379, 385 (Wis. 1997). As Ohio courts have held, once the state breaches its bargain, "counsel ha[s] a duty to object to the prosecutor's conduct and a duty to insist that the prosecutor carry out the terms of the plea agreement or permit his client to withdraw his plea." *State v. Spence*, No. 09-CA-25, 2009 WL 4546628, at *2 (Ohio Ct. App. Dec. 4, 2009). When counsel instead "inexplicably remain[s] silent," he "breach[es] his duty to his client." *Id.*

The magistrate judge correctly held below that Mr. Liles's counsel performed deficiently. Report & Recommendation, R.33, PageID# 2494. The district court did not challenge this holding. *See* Order, R.40, PageID# 2615 (conceding that "the fail-

29

ure of [Mr. Liles's] counsel to object to the prosecution's alleged breach may constitute deficient performance").[16] As the magistrate judge explained, there was no "strategic reason" for Mr. Liles's counsel "to remain silent." Report & Recommendation, R.33, PageID# 2494. "Indeed, 'it is difficult to conceive of a reason for not objecting' to the prosecutor's statements." *Id.*, PageID# 2494–95 (quoting *Ege v. Yukins*, 485 F.3d 364, 378 (6th Cir. 2007)).

Bolstering a finding of deficient performance, the magistrate judge explained that "the sentencing recommendation issue appears to have been an important one during plea negotiations," since the material difference between the first agreement Mr. Liles rejected and the one that he accepted was the prosecution's "offer to refrain from making a sentencing recommendation." Report & Recommendation, R.33, PageID# 2495. In other words, even if there is somehow an occasion where defense

---

[16] The state made a curious argument about deficient performance below. In objecting to the magistrate judge's report and recommendation, the state argued that counsel did not perform deficiently. Resp't's Objections, R.35, PageID# 2531. The state's whole argument centered on another magistrate judge's unpublished report and recommendation in a different case, *Morrison v. Warden*, 2016 U.S. Dist. LEXIS 178653 (S.D. Ohio Dec. 27, 2016), with the state arguing that what happened here was similar to what happened there. Resp't's Objections, R.35, PageID# 2531–32. But there, the magistrate judge specifically held that the prosecutor "did not breach the plea agreement," and further held that there was "no evidence to suggest that the sentence would have been any different" without the prosecutor's alleged offending remarks, and thus the court also did "not find any prejudice." *Morrison,* 2016 U.S. Dist. LEXIS 17865, at *26. The magistrate judge in *Morrison* said nothing about deficient performance, making the state's reliance on the case both confusing and misplaced.

30

counsel can "strategically" decide not to object to a prosecutor's breach, this case, where the breach concerned a term that was material to Mr. Liles entering the agreement, did not present those facts.

This Court should hold that Mr. Liles's "trial counsel performed deficiently in not objecting to the breach." *State v. Gonzalez-Faguaga*, 662 N.W.2d 581, 589 (Neb. 2003); *see Baldridge v. Weber*, 746 N.W.2d 12, 20 (S.D. 2008) ("Defense counsel's failure to object when the State breached a material element of the plea agreement amounted to a denial of the assistance of counsel."). Mr. Liles has shown cause to excuse the procedural default of his plea-breach claim.

### B. Mr. Liles Was Prejudiced By Counsel's Failure to Object to the State's Breach.

Trial counsel's failure to object to the state's established breach prejudiced Mr. Liles. To satisfy *Strickland*'s prejudice standard, all Mr. Liles must do is "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is less than a preponderance of the evidence, as '[Mr. Liles] need not show that counsel's deficient conduct more likely than not altered the outcome in the case.'" *Joseph*, 469 F.3d at 459 (quoting *Strickland*, 466 U.S. at 693). In the plea-breach context, "the 'outcome' [Mr. Liles] must show to have been affected is his sentence." *Puckett v. United States*, 556 U.S. 129, 142 n.4 (2009).

31

A full reading of the record reveals a reasonable probability that the prosecutor's breach affected the trial court's sentencing decision.

When the hearing began, the sentencing judge had before him a detailed memorandum from Mr. Liles urging a 14-year sentence. Sent'g Mem., R.30-1, PageID# 1190. The memorandum, with letters from community members in support, described Mr. Liles as precisely who he was: a mid-forties father and caregiver who was remorseful, nonviolent, crime-free for over a decade, and unlikely to reoffend. Also before the court was Mr. Liles's ORAS score, which confirmed that Mr. Liles's risk of reoffending was only moderate. Sent'g Hr'g, R.30-2, PageID# 2386. Plus, the court knew that Mr. Liles's charges stemmed from a series of controlled buys orchestrated by a state informant at the behest of the Allen County Sheriff (who would later be a defendant himself). Op., R.30-1, PageID# 1348; Sent'g Hr'g, R.30-2, PageID# 2384 (sentencing judge explaining that he reviewed the discovery in the case). The sentencing judge thus began the hearing with a record that supported leniency.

The prosecutor immediately upended that narrative and told a story untethered to the conduct in this case. The prosecutor proclaimed that Mr. Liles committed the "worst form of the offense," and asserted with no support that "kids" were now addicted to drugs, "lives [were] ruined," and "secondary crimes" were committed, all because of "product [Mr. Liles] put[] on our streets." Sent'g Hr'g, R.30-2, PageID#

32

2386–88. This, of course, was not true, as the state's case was premised solely on a series of controlled buys set-up by its own informant.

And based on this inaccurate framing of Mr. Liles and his alleged offense, the prosecutor declared, "without making a specific recommendation, [that] certainly a longer sentence, a much longer sentence, is the appropriate sentence and anything less would demean the seriousness of the offense." *Id.*, PageID# 2390. The prosecutor warned that other drug dealers were "watching today to see whether or not the cost of doing business is going to be worth it." *Id.*, PageID# 2388–89. And the prosecutor closed with this: "It is our belief that you owe it to the community to impose a very, very substantial sentence on the defendant." *Id.*, PageID# 2391.

The prosecutor's remarks at sentencing were a clear and emphatic call for a harsh sentence. The prosecutor recast the case as a referendum on public safety rather than a routine drug prosecution. As the magistrate judge observed when finding prejudice, the prosecution "argued that a harsher sentence was not merely appropriate, but something the trial judge owed the community to avoid demeaning the seriousness of the offense." Report & Recommendation, R.33, PageID# 2498.

The sentencing judge's remarks mirrored the prosecutor's themes almost word for word. The first question out of the judge's mouth in his extended back-and-forth with Mr. Liles was him asking Mr. Liles, "How many people, maybe that you didn't sell directly to, but ended up receiving the cocaine that ended with you, how many

33

of those people were killed by guns or committed other crimes?" Sent'g Hr'g, R.30-2, PageID# 2401. This resembled the prosecutor's rhetorical questions, who during his remarks asked: "How many kids are addicted to drugs because of the product he put on the streets? How many lives have been ruined by the drugs and cocaine that he has placed into the stream of commerce?" Sent'g Hr'g, R.30-2, PageID# 2387–88. And as proof that the sentencing judge fully leaned into the prosecutor's narrative, he even emphasized after asking his own version of the prosecutor's "how many people" question that "that's what this is about here." *Id.*, PageID# 2401.

Then, before pronouncing his sentence, the sentencing judge said he had considered "the statements of all the people that spoke up" at the hearing, *Id.*, PageID# 2417, which obviously included the prosecutor's plea for severity. And the judge imposed a 25-year sentence—over a decade longer than the sentence Mr. Liles requested—to reflect the "seriousness of the conduct" and "protect the public"—the same reasons the prosecutor gave when urging a harsh sentence. *Id.*, PageID# 2419.

On this record, there is a reasonable probability that the prosecutor's breach affected the outcome of sentencing.

First, the sentencing judge said that he considered what everyone who spoke at sentencing had to say in formulating his sentence, and the prosecutor had much to say. Second, the judge's extended colloquy with Mr. Liles was framed by the prosecutor's remarks, assuming Mr. Liles committed crimes that had outsized downstream

34

effects (when they didn't). This is proof that the judge took the prosecutor's words to heart. Third, the judge imposed "a very, very substantial sentence" for the very reasons the prosecutor urged—because the offense was serious (the "worst form," according to the prosecutor), and to protect the public. Taken together, these similarities between the prosecutor's rhetoric and the judge's reasoning demonstrate a reasonable probability that the state's breach of the plea agreement—and Mr. Liles's counsel's failure to object to it—shaped the sentencing calculus.

When reviewing de novo, this Court should reject the district court's reading of the record. The district court itself acknowledged that the prosecutor's recommendation "undoubtedly matters" to sentencing courts and that this particular judge said he considered "the statements of all the people that spoke up" when formulating his sentence. Order, R.40, PageID# 2617. Yet the district court still concluded, thereby rejecting the magistrate judge's recommendation, that there was no reasonable probability the prosecutor's remarks affected the sentencing. *Id.*, PageID# 2618.

That conclusion is inconsistent with the record. The prosecutor did not hold back—he told the judge that Mr. Liles had committed "the worst form of the offense," that "a much longer sentence" was warranted, and that the court "owe[d] it to the community" to impose "a very, very substantial sentence." Sent'g Hr'g, R.30-2, PageID# 2390–91. The judge then echoed those same themes almost word for word when imposing a "very, very substantial sentence" of twenty-five years—one

"much longer" than Mr. Liles requested. Given those parallels, the district court's suggestion that the prosecutor's statements might have had "some impact" and "undoubtedly matter[ed]" but not enough to make it reasonably probable that the outcome would have been different absent the breach makes little sense. The sentencing judge's own words show that the prosecutor's breach shaped both his understanding of the case and the sentence that he imposed.

"The question isn't whether [Mr. Liles's] prison term would have been drastically shorter—just whether it was reasonably likely that the prison term would not have been as long had the district court considered only permissible factors"—i.e., not considered the prosecutor's arguments made in breach of the plea agreement. *In re Sealed Case*, 573 F.3d 844, 852 (D.C. Cir. 2009). On this record, there is a reasonable probability that but for the state's breach, the outcome at Mr. Liles's sentencing would have been different, if only even slightly. Mr. Liles has demonstrated prejudice to excuse his plea breach claim. *Strickland*, 466 U.S. at 693.

**II.     Mr. Liles Is Entitled to Habeas Relief on the Established Plea Breach.**

Because Mr. Liles has overcome procedural default, this Court must review his plea-breach claim "on the merits." *Deitz v. Money*, 391 F.3d 804, 812 (6th Cir. 2004), *abrogated on other grounds by Stone v. Moore*, 644 F.3d 342 (6th Cir. 2011) (remanding to district court to consider habeas claim after finding ineffective assistance of counsel excused procedural default); *see Fontenot v. Crow*, 4 F.4th 982,

36

1060–61 (10th Cir. 2021) (explaining that once a petitioner overcomes default, if the claim was reviewed on the merits in the state court, it is reviewed as any other claim under AEPDA; if it was not, it is reviewed de novo).

As for the merits, this case is easy: because the state breached the plea agreement, clearly established federal law compels this Court to grant the Writ.

The Supreme Court held in *Santobello* that due process requires "that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262. And like federal courts, Ohio courts have held that plea agreements are "contractual in nature and subject to contract-law standards." *State v. Butts*, 679 N.E.2d 1170, 1172 (Ohio Ct. App. 1996) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)) (quotation marks omitted).

But even though "plea agreements are contractual in nature, a defendant's underlying right of contract is constitutional, and therefore [plea agreements] implicate[] concerns in addition to those pertaining to the formation and interpretation of commercial contracts between private parties." *United States v. Johnson*, 979 F.2d 396, 399 (6th Cir. 1992) (internal citation omitted). Accordingly, a plea agreement must "be construed strictly against the state." *State v. Dixon*, 263 N.E.3d 497, 503 (Ohio Ct. App. 2025) (citation and quotation marks omitted). And "[b]ecause a defendant obtains a plea agreement only at the expense of his constitutional rights,

37

prosecutors are held to meticulous standards of performance." *Moncivais*, 492 F.3d at 662.

Here, the state promised in big, bold lettering, that it would "MAKE NO SENTENCING RECOMMENDATION." Negotiated Plea of Guilty Form, R.30-1, PageID# 1186. The state no doubt broke its promise when it "submit[ted] to the Court . . . that certainly a longer sentence, a much longer sentence, is the appropriate sentence and anything less would demean the seriousness of his offense," and further asked the judge "to impose a very, very substantial sentence." Sent'g Hr'g, R.30-2, PageID# 2390–91. Indeed, before the district court, the state did not quarrel with the conclusion that it breached the plea agreement it entered with Mr. Liles.

Nor could it—the Ohio Court of Appeals already held that the state breached the plea agreement. Before that court, the state had argued that "the prosecutor's statements did not amount to a 'recommendation' of sentence to the trial court and fell within the parameters of the plea agreement," given that it had "reserved the right to be heard at sentencing," Op., R.30-1, PageID# 1351. The Ohio Court of Appeals roundly rejected this argument, "conclu[ding] that when the prosecutor checked the box promising to 'make no sentencing recommendation,' the prosecutor was bound to refrain from making statements suggesting or intimating the length of the sentence that should be imposed as it did in this case." *Id.*, PageID# 1355. The Court of Appeals was "not persuaded by the prosecution's argument that the vague

38

reservation of 'the right to be heard' adequately apprised [Mr. Liles] that the promise to 'make no sentencing recommendation' was modified in such a manner as to only restrict the prosecutor from advocating for a specific term of years at sentencing." *Id.*, PageID# 1355–1356. Accordingly, the Court of Appeals held that the prosecution's remarks "clearly overstepped the boundaries of the promise to 'make no sentencing recommendation' and as such violated the plea agreement." *Id.*, PageID# 1356.

This Court must defer to the Ohio Court of Appeals' legal conclusion that the state breached the plea agreement. *See State v. Soto,* No. 12-24-06, --N.E.3d--, 2025 WL 2762479, at *10 (Ohio Ct. App. 2025) (explaining that whether the state breached a plea agreement is a question of law). The Supreme Court has repeatedly explained that AEDPA's "highly deferential standard for evaluating state-court rulings [ ] demands that state-court decisions be given the benefit of the doubt." *Pinholster*, 563 U.S. at 181 (quotation marks omitted) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). This deep respect for state court judgments reflects "'AEDPA's goal of promoting comity, finality, and federalism, by giving state courts the first opportunity to review [a] claim, and to correct any constitutional violation in the first instance.'" *Pinholster*, 563 U.S. at 185 (quoting *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009)). For that reason, this Court "defer[s] to the state court's

legal conclusions unless they involve an unreasonable application of clearly established federal law." *McGhee v. Yukins*, 229 F.3d 506, 509 (6th Cir. 2000).

To be sure, it is not every day that a habeas petitioner asks this Court to defer to a state court ruling. But this is an unusual case. This is the rare circumstance in which a state court held that a defendant would have been entitled to relief on a federal constitutional claim but for a state procedural bar. AEDPA expects that some state petitioners will be able to overcome state procedural bars so that federal courts can hear their constitutional claims. *See, e.g.*, *Ambrose v. Booker*, 684 F.3d 638, 648 (6th Cir. 2012) (explaining that AEDPA's procedural bar "is intended to prevent defense counsel from defaulting in state court for strategic gain"). AEDPA also specifically instructs federal courts to defer to state-court rulings on the merits of those claims once a procedural bar is cleared. *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (reiterating AEDPA's "highly deferential standard for evaluating state-court rulings") (quotation marks and internal citation omitted)). Deference is appropriate no matter who invokes it, as the principles of comity and federalism still equally apply.

Even if deference were not appropriate, the Ohio Court of Appeals' decision is obviously correct. Again, plea agreements must be construed strictly against the state, and the state must be held to a standard of meticulous performance. *Moncivais*, 492 F.3d at 662. With that exacting standard in mind, the prosecutor clearly "recom-

40

mended a sentence" as forbidden by the agreement when he asked the judge to impose a "much longer sentence" and a "very, very substantial sentence." Like the magistrate judge below, this Court should hold that the state broke its promise.

Free from plain-error review, Mr. Liles does not have to show any form of prejudice.[17] This Court, following the Supreme Court, could not have been clearer: "If the government breaches a plea agreement, a defendant is entitled to relief regardless of whether the district court was ultimately influenced by the breach and regardless of whether the breach was inadvertent." *United States v. Ligon*, 937 F.3d 714, 718–19 (6th Cir. 2019). This ironclad rule flows straight from *Santobello* given that the *Santobello* Court "was clear that whether the government's breach actually influenced the sentence is irrelevant." *Warren*, 8 F.4th at 450. The Supreme Court has been unequivocal: when a plea-breach claim is preserved, and a breach is found, "automatic reversal is warranted." *Puckett*, 556 U.S. at 141.

This only leaves the question of remedy. "The very nature of the writ demands that it be administered with the initiative and flexibility essential to ensure that miscarriages of justice within its reach are surfaced and corrected." *Hensley v. Mun. Ct.*, 411 U.S. 345, 350 (1973) (citation and quotation marks omitted). "Discretion is implicit in the statutory command that the judge, after granting the writ and holding a

---

[17] Although, as explained in Part I.B., Mr. Liles can show prejudice.

41

hearing of appropriate scope, 'dispose of the matter as law and justice require.'" *Fay v. Noia*, 372 U.S. 391, 438 (1963) (quoting 28 U.S.C. § 2243).

To remedy the breach of a plea agreement, this Court has two choices: allow Mr. Liles to withdraw his plea or order a resentencing before a different judge. *Mandell*, 905 F.2d at 973. This Court could alternatively leave it to the state courts to determine the remedy for the constitutional violation. *See, e.g.*, *Robinson v. Woods*, 901 F.3d 710, 718 (6th Cir. 2018) (remanding to the state court for a sentencing proceeding consistent with the decision).

Given the extraordinary facts of this case, this Court should exercise it "broad discretion" in fashioning habeas relief by granting the Writ with an order that allows Mr. Liles to withdraw his plea. *Morrell v. Wardens*, 12 F.4th 626, 631 (6th Cir. 2021) (quotation marks omitted). That is the only remedy that will adequately "cure the constitutional injury" that Mr. Liles suffered. *Id.* (quotation marks omitted).

Recall the facts. The entire case against Mr. Liles was orchestrated by a sheriff who would later be federally indicted for his crimes, and whom the federal government would officially recognize as having victimized Mr. Liles. Affidavit, R.30-1, PageID# 2031 (citing *United States v. Samuel A. Crish*, 3:18-cr-00304-JRK, R. 33-1, PageID# 226). During the plea process and at sentencing, Mr. Liles was represented by an attorney who himself was in the middle of a criminal investigation—including having his office raided by law enforcement just days before Mr. Liles's

42

plea hearing—and who would later plead guilty to misappropriating his client's property. Postconviction Pet., R.30-1, PageID# 1919 & n1.

Allowing Mr. Liles to withdraw his plea would begin to unwind the utter collapse of the adversarial process in this case. By contrast, a resentencing would leave intact a plea that was negotiated and entered while both the prosecution and the defense were compromised by extraordinary criminal misconduct. It would force Mr. Liles to remain bound by an agreement forged during a defective process that was defined by a corrupt sheriff who manufactured the case, by defense counsel whose own criminal exposure undermined his ability to advocate, and by a prosecutor who flagrantly violated his obligations under the plea agreement.

To cure the constitutional violation, this Court should grant the Writ with an order that Mr. Liles be allowed to withdraw his plea. That is the remedy "law and justice require." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (quotation marks omitted).

## CONCLUSION

For these reasons, this Court should conditionally grant the Writ with an order that Mr. Liles be allowed to withdraw his plea.

Respectfully submitted,

/s/Daniel Scott Harawa

Daniel S. Harawa
*Counsel of Record*
Adam B. Murphy
New York University School of Law
Federal Appellate Clinic
245 Sullivan St., 5th Floor,
New York, NY 10012
(212) 998-6420
daniel.harawa@nyu.edu

44

## CERTIFICATE OF COMPLIANCE

In accordance with Rule 32(a) of the Federal Rules of Appellate Procedure, undersigned counsel for appellant certifies that the accompanying brief is printed in Times New Roman 14-point font, and including footnotes, contains no more than 13,000 words. According to the word-processing system used to prepare the brief, Microsoft Word, the relevant sections of the brief under Rule 32(f) contain 10,124 words.

/s/Daniel Scott Harawa
Daniel S. Harawa

CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2025, I filed the foregoing Brief with the Clerk of the Court using the CM/ECF System, which will send notice of the filing to all counsel of record.

/s/Daniel Scott Harawa
Daniel S. Harawa

## ADDENDUM

## DESIGNATION OF RELEVANT COURT DOCUMENTS

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Petition for Writ of Habeas Corpus | October 20, 2017 | 1 | 1–16 |
| Bond Hearing Transcript | September 4, 2014 | 30-2 | 2299–2343 |
| Change of Plea Hearing Transcript | September 22, 2014 | 30-2 | 2344–2376 |
| Guilty Plea Form | September 23, 2014 | 30-1 | 1185–1189 |
| Sentencing Memorandum | November 14, 2014 | 30-1 | 1190–1198 |
| Sentencing Hearing Transcript | December 1, 2014 | 30-2 | 2379–2424 |
| Ohio Court of Appeals Opinion | August 3, 2015 | 30-1 | 1345–1376 |
| Memorandum in Support of Jurisdiction | August 25, 2015 | 30-1 | 1379–1427 |
| Petitioner's Successor Post-conviction Petition to Vacate or Set Aside Judgment | July 6, 2021 | 30-1 | 1918–2059 |
| Memorandum in Support of Jurisdiction | July 7, 2022 | 30-1 | 2239–2269 |
| Magistrate Judge's Report and Recommendation | September 6, 2023 | 33 | 2465–2522 |
| Respondent's Objections to Report and Recommendation | September 20, 2023 | 35 | 2525–2559 |
| Motion for Response to Report and Recommendation | April 1, 2025 | 39 | 2600–2603 |
| District Court Order Denying Petition and Granting Certificate of Appealability | June 16, 2025 | 40 | 2604–2622 |

47